IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

LATAUSHA N. WARREN,                )
                                   )        CIVIL ACTION
          Plaintiff,               )
                                   )        NO: 1:09-CV-1408-TWT-ECS
v.                                 )
                                   )
MICHAEL J. ASTRUE,                 )
Commissioner of Social Security,   )
                                   )
          Defendant.               )

**FINAL REPORT AND RECOMMENDATION OF**
**UNITED STATES MAGISTRATE JUDGE**

**I.**
**Introduction**

Latausha N. Warren, the plaintiff-appellant ("Appellant"), brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c) to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her claim for disability benefits.  This case is presently before the Court upon the administrative record and the parties' pleadings and briefs. Plaintiff filed no reply brief in response to the Commissioner's memorandum arguing for affirmance.  For the reasons expressed herein, it is **RECOMMENDED** that the Commissioner's decision be **AFFIRMED.**

## II.
## Procedural History

On August 6, 2003, Appellant filed a Title II application for a period of disability and disability insurance benefits. (Transcript of Administrative Record ("T.") 86). Also on August 6, 2003, Appellant filed a Title XVI application for Supplemental Security Income. (T. 120). Both applications alleged an onset of disability as of April 25, 2003. (T. 21). The Commissioner denied the applications initially and upon reconsideration. (T. 21). After a July 18, 2006, hearing, Administrative Law Judge ("ALJ") O. Lisa Dabreu issued a decision on August 31, 2007, finding Appellant not disabled. (T. 21-28). On March 16, 2009, the Appeals Council denied Appellant's request for review. (T. 5-8). On May 14, 2009, Appellant filed her complaint in this Court seeking a review of the Commissioner's decision. [Doc. 2].

## III.
## Factual Background

Appellant was 30 years old at the time of her hearing and a high school graduate. (T. 641). She has past relevant work as a cashier, a fast food worker, a telemarketer, and an assistant registrar. (T. 124-25, 641). Additionally, Appellant can show that she was insured through March 31, 2008; therefore, in order to receive disability insurance benefits, she must show that she was disabled on or before that date. (T. 23).

2

**A.   Medical History**

On October 26, 2000, Appellant was admitted to Memorial Hospital at Gulfport because of her complaints of severe flank and abdominal pain and nausea.  (T. 378-79).  She was diagnosed with renal calculus[1] with staghorn type and hydronephrosis[2].  (T. 378).  During her five day hospital stay, Dr. Ronald Brown performed a cystoscopy and right retrograde pyelogram, but no obstruction was found.  (T. 381).

On January 6, 2001, Appellant was again admitted to Memorial Hospital at Gulfport where she presented with severe left flank pain, fever, and "was basically acutely ill."  (T. 382).  Appellant was given a ureteroscopy on January 15, 2001, which revealed stone fragments.  (T. 382).  The stones were fragmented into smaller pieces and washed down the ureter.  (T. 382).

Appellant presented to Gulf Coast Medical Center on April 15, 2002, with "left flank pain with temperature in excess of 103" and "diabetes mellitus."  (T. 150).  Dr. Craig Dawkins also performed a stent removal and ureterostomy on Appellant and diagnosed her with left ureteral pelvic junction obstruction.  (T. 153).  Appellant

---

[1] Renal Calculus is the medical term for a kidney stone. Taber's Cyclopedic Medical Dictionary.

[2] Hydronephrosis is defined as "stretching of the renal pelvis as a result of obstruction to urinary flow."  Taber's Cyclopedic Medical Dictionary.

AO 72A
(Rev.8/82)

reported to Dr. Dawkins again on May 13, 2002, where her stent was removed.  (T. 162).

On June 18, 2002, Appellant was admitted again to Gulf Coast Medical Center where she was diagnosed with stenotic left ureteropelvic junction obstruction.  (T. 155).  Her "pathology report demonstrated marked fibrosis with intramural calcifications." (T. 155).

On May 6, 2002, Appellant presented to Coast Urology Center complaining of flank pain and dark urine.  (T. 343).  Appellant was again diagnosed with ureteropelvic junction obstruction.  (T. 343).

On September 21, 2004, Dr. Rachael F. Tadlock, one of Appellant's treating physicians from Gulf Coast Medicine hand wrote a letter to an undisclosed recipient which stated that "because of frequent hospitalizations and procedures . . . [Appellant] has been unable to maintain gainful employment."  (T. 423).

On March 3, 2005, Appellant was admitted to Garden Park Medical Center for nausea and vomiting.  (T. 482).  Dr. Joseph Faison noted that Appellant had "a history of diabetes mellitus . . . peripheral neuropathy[3] . . . [and] some retinopathy[4]."  (T. 482).  Appellant

--------

[3] Neuropathy is defined as "any disease of the nerves." Taber's Cyclopedic Medical Dictionary.

[4] Retinopathy is defined as "any disease of the retina." Taber's Cyclopedic Medical Dictionary.

was given an ultrasound of the gallbladder, a liver profile and an esophagogastroduodenoscopy. (T. 484). The tests revealed that most functions were in the normal range, however, Appellant's left kidney evidenced at least two left renal calculi. (T. 493).

On October 27, 2005, Appellant was treated at DeKalb Medical Center for abdominal pain and nausea. (T. 548). On June 14, 2006, Appellant presented to DeKalb Medical Center with bilateral flank pain. (T. 535). On August 29, 2006, Appellant was treated at DeKalb Medical Center for a urinary tract infection and bilateral flank pain, but there was "no evidence of acute abdominal process or renal calculi." (T. 522, 533). On September 15, 2006, Appellant again presented to DeKalb Medical Center where it was noted that Appellant "fe[lt] like [she was] passing a kidney stone." (T. 513). Further, Appellant reported numbness in her legs, lower back pain, and abdominal pain. (T. 513).

On January 11, 2007, non-examining consultant, Dr. Michael S. Landy, an internist, completed a set of written interrogatories. (T. 572). After a review of Appellant's medical record, he opined that Appellant suffered from no severe medical impairments and did not meet any Listings of the Commissioner. (T. 572).

One June 8, 2007, examining consultant, Dr. Robert Jackson, performed a physical examination on Appellant. (T. 581). He noted in his history of present illness that Appellant had suffered with

AO 72A
(Rev.8/82)

diabetes for ten years, had high blood pressure, and gastroparesis which caused nausea. (T. 581). He noted Appellant's history of kidney stones. Further, he noted that Appellant reported a disc problem in her back which sometimes made it difficult for Appellant to stand for long periods. (T. 581). In his examination, he found that Appellant was five feet, five inches tall and weighed 230 pounds. (T. 582). She was in no acute distress and did not require a cane or other assistance for ambulation. (T. 582). In his assessment, Dr. Jackson found that Appellant was "a female with history of diabetes with microvascular complications (neuropathy). She has had some complications with her kidneys (frequent stones) and is status post several corrective procedures but still complains of frequent kidney stones and blockages. Patient demonstrates good functionality with activities of daily living despite her diabetic issues. She ambulates well without assistance. Blood pressure is currently controlled and is below target range. . . ." (T. 582-83).

## B.  Hearing Testimony

On July 18, 2006, the ALJ held a hearing in which Appellant and Vocational Expert Roger Decker ("the VE") testified.

At the hearing, Appellant testified that she was "presently enrolled in . . . [a] medical assistant program." (T. 642). She was in class "four hours a day, from Monday through Thursday." (T. 642). Appellant testified that she could drive and lived with her

four children ages 12, 10, 8, and 3, at the time.   (T. 644-45).
Appellant described her typical day as follows:

> "Well, right now, for the summer all I have are my boys.
> To give me kind of (sic) break since I've been sick, my
> mom has my girls for the summer.  So, usually when I was
> working, I would get up at 6:30 in the morning, get
> myself dressed, get myself together, get the boys to, to
> their dad, go to work, pretty much work my shift, come
> home, change, go to school, because I go to school in the
> evening from 6:00 to 10:00.  But when I had to, when the
> doctor took me off work I just pretty much was it, was
> unable to really do anything.  My kids' dad had to come
> in to kind of tend to the boys, because I was, when I
> take the medicine that they give me for pain it makes me
> sleep."

(T. 645).

Appellant testified that she had pain in her left flank area
where she has had kidney stones and, to a lesser degree, her right
flank area.  She described the pain as a "ten-plus" which occurs
three to four days per week.  (T. 645-46).  She stated that in order
to relieve that pain she takes medicine and lies around, and
sometimes takes a warm bath or uses a heating pad.  (T. 646).

Appellant testified that she can only walk 100 feet comfortably
and is in pain in longer distances.  (T. 647).  She testified that
she can stand comfortably for about 30 minutes.  (T. 647).  She
stated that she could sit about one hours comfortably before her
legs begin to go numb.  (T. 648).  Further, she testified that the
maximum weight she could comfortably lift was thirty pounds.  (T.
648).

7

The VE testified that a hypothetical claimant of Appellant's age, education, and past work experience who could "lift 50 pounds occasionally, 25 pounds frequently. Stand and walk for a total of six hours in an eight hour day. Sit for a total of six hours in an eight hour day. Avoid repetitive crouching, crawling, stooping, squatting. The ability to perform at a consistent pace without taking occasional brakes is fair. The ability to maintain attention and concentration for extended periods beyond two hours is fair due to pain . . . would be able to perform all four jobs [of Appellant's past relevant work]." (T. 650-51). The VE testified that a similar hypothetical person who "was able to lift 30 pounds," but whose "ability to perform at a consistent pace without taking frequent breaks is poor" would not be able to do her past work. (T. 651). Furthermore, the VE testified that a "person who was only able to lift 10 pounds; stand and walk for a total of two hours in an eight-hour day; sit for a total of six hours in an eight-hour day, with all of the restrictions . . . in hypothetical one . . . would be able to perform the work of the telemarketer and of the assistant registrar." (T. 651-52).

## IV.
## Standard for Determining Disability

An individual is considered to be disabled for the purposes of disability payments if he is unable to "engage in any substantial

AO 72A
(Rev.8/82)

gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). The impairment or impairments must result from anatomical, psychological, or physiological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. Moreover, the impairment must be of such severity that it precludes the claimant from performing his previous work and, considering his age, education, and work experience, any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)-(3) and 1382c(a)(3)(B)-(C).

The claimant has the initial burden of establishing the existence of a "disability" by demonstrating that he is unable to perform his former type of work. Freeman v. Schweiker, 681 F.2d 727, 729 (11th Cir. 1982). If the claimant satisfies his burden of proving disability with respect to his former type of work, the burden shifts to the Commissioner to demonstrate that the claimant, given his age, education, work experience, and impairment, has the capacity to perform other types of jobs which exist in the national economy. Boyd v. Heckler, 704 F.2d 1207, 1209 (11th Cir. 1983).

Under the regulations as promulgated by the Commissioner, a five step sequential process must be followed when evaluating a

9

disability claim.  20 CFR §§ 404.1520(a) and 416.920(a).  In the sequential evaluation, the Commissioner must consider in order: (1) whether a claimant is gainfully employed, 20 CFR §§ 404.152(b) and 416.920(b); (2) whether the claimant has a severe impairment which significantly limits his ability to perform basic work-related functions, 20 CFR §§ 404.1520(c) and 416.920)(c); (3) whether the claimant's impairment meets the listing of impairments found in: 20 CFR §§ 404.1520(d) and 416.920(d); (4) whether the claimant can perform his past relevant work, 20 CFR §§ 404.1520(e) and 416.920(e); and (5) whether the claimant is disabled in light of his age, education, and residual functional capacity, 20 CFR §§ 404.1520(f) and 416.920(f).  If, at any step in the sequence, a claimant can be found disabled or not disabled, the sequential evaluation ceases and further inquiry ends.  20 CFR §§ 404.1520(a) and 416.920(a).

## V.
## The ALJ's Decision

On August 31, 2007, the ALJ issued a decision concluding that Appellant "has not been under a disability within the meaning of the Social Security Act from April 25, 2003, through the date of this decision."  (T. 28).  In so concluding, the ALJ found that "the claimant has the residual functional capacity to perform the full range of sedentary work."  (T. 26).

AO 72A
(Rev.8/82)

In the course of her decision, the ALJ made the following specific findings and conclusions:

1.  The claimant met the insured status requirements of the Social Security Act through March 31, 2008.

2.  The claimant has not engaged in substantial gainful activity since April 25, 2003, the alleged onset date (20 CFR 404.1520(b), 20 CFR 404.1571, et seq., 20 CFR 416.920(b), and 20 CFR 416.971, et seq.).

3.  The claimant has the following severe impairments: peripheral neuropathy secondary to diabetes mellitus; status post pyloroplasty[5]; diabetes mellitus; hypertension; and repetitive renal calculi (20 CFR 404.1520(c) and 20 CFR 416.920(c)).

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform the full range of sedentary work.

6.  The claimant is capable of performing past relevant work as a cashier or fast food worker. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

7.  The claimant has not been under a disability, as defined in the Social Security Act, from April 25, 2003, through the date of this decision (20 CFR 404.1520(f) and 416.920(f). (T. 23-28).

---

[5] Pyloroplasty is defined as an "operation to repair the pylorus, esp. one to increase the caliber of the pyloric opening by stretching." Taber's Cyclopedic Medical Dictionary.

11

## VI.
## Standard of Review

The scope of judicial review of the Commissioner's decision is limited.   The Court's function is (1) to determine whether the record, as a whole, contains substantial evidence to support the findings and decision of the Commissioner and (2) whether the Commissioner applied proper legal standards.   See Vaughn v. Heckler, 727 F.2d 1040, 1042 (11th Cir. 1984); see also Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).   While the Court defers to the Commissioner's factual findings, the Court performs a de novo review of the legal conclusions because "no presumption of validity attaches to the Secretary's determination of the proper legal standards to be applied in evaluating claims."   Davis v. Shalala, 985 F.2d 528, 531 (11th Cir. 1993)(citing Bridges v. Bowen, 815 F.2d 622, 624 (11th Cir. 1987)).

## VII.
## Discussion

**A.    Did the ALJ err by failing to give proper consideration to the combined effect of Appellant's impairments?**

Appellant contends that the ALJ committed reversible error by failing to give proper consideration to the combined effect of Appellant's impairments.   (App. Br. at 8).   In response, the Commissioner asserts that "the ALJ's decision reflects that he (sic)

12

fully considered Plaintiff's impairments both individually and in combination." (Comm. Br. at 4).

The ALJ is required to consider all of Appellant's impairments when determining her residual functional capacity. 20 C.F.R. § 404.1545(a),(e). See also Jones v. Bowen, 810 F.2d 1001, 1006 (11th Cir. 1986)("ALJ must consider not only the disabling effect of each of the appellant's ailments individually, but also the combined effect of all of the appellant's impairments."). When a claimant has multiple impairments, the impairments that are not severe must also be considered when determining her residual functional capacity. 20 C.F.R. § 1545(a)(2). "We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe,' . . . when we assess your residual functional capacity." Id.

In addition, "it is the duty of the . . . [ALJ] to make specific and well-articulated findings as to the effect of the combination of impairments and to decide whether the combined impairments cause the claimant to be disabled." Bowen v. Heckler, 748 F.2d 629, 634 (11th Cir. 1984). However, the Eleventh Circuit has also held that the statement by the ALJ that she considered the impairments in combination is sufficient to show that the ALJ considered the combined effect of Appellant's impairments. See Jones v. Dep't of Health & Human Svcs., 941 F.2d 1529, 1533 (11th

13

Cir. 1991)(noting that the statement that the claimant does not have "an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulation No. 4" indicated that the ALJ considered the combined effect of appellant's impairments); see also Wilson v. Barnhart, 284 F.3d 1219, 1224-25 (11th Cir. 2002)(holding that an ALJ's statement that the claimant "did not have an impairment or *combination of impairments* listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4 . . . constitute[d] evidence that [the ALJ] considered the combined effects of [the claimant's] impairments")(emphasis in original).

In her decision, the ALJ specifically stated that "[t]he claimant does not have an impairment *or combination of impairments* that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (T. 26)(emphasis added). Here, as in Jones and Wilson, the ALJ's statement is sufficient to show that she considered the combined effects of Appellant's impairments when determining her disability claim. See Wheeler v. Heckler, 784 F.2d 1073, 1077 (11th Cir. 1986)("The ALJ states in his decision that 'based upon a thorough consideration of all evidence, the ALJ concludes that appellant is not suffering from any impairment, *or combination of impairments* of sufficient severity to prevent him from engaging in any substantial gainful activity for

14

a period of at least twelve continuous months.'  It is clear the ALJ considered the combination issue.")(emphasis in original).

Accordingly, the undersigned concludes that the ALJ did not err by failing to give proper consideration to Appellant's impairments in combination.

**B.   Did the ALJ err by failing to properly perform a function-by-function assessment?**

Appellant asserts that the ALJ erred "because the ALJ did not comply with Social Security Ruling 96-8p in assessing [Appellant's] residual functional capacity." (App. Br. at 10).  Appellant argues that the ALJ erred because she "did not consider each of the seven strength demands separately before she determined that [Appellant] retained the ability to perform the full range of sedentary work." (App. Br. at 11).

SSR 96-8p regulates the ALJ's assessment of a claimant's RFC. Under SSR 96-8p, the "RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis. . . Only after that may RFC be expressed in terms of exertional levels of work, sedentary, light, medium, heavy, and very heavy." (SSR 96-8p at 1).  The regulation specifically mandates a narrative discussion of "the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing

basis . . . and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record." (SSR 96-8p at 6).

Where an ALJ considers all of the evidence, determines that the claimant is not disabled, and also poses a hypothetical to a VE which limits the claimant to a certain level of exertional activity, the Eleventh Circuit has found that the ALJ complied with the requirements of SSR 96-8p. See Freeman v. Barnhart, 220 Fed.Appx. 957, 960 (11th Cir. 2007). In Freeman, the claimant alleged that "the ALJ failed to identify her functional limitations and work-related abilities on a function-by-function basis." Id. at 959. The Court found that "[w]hile the ALJ could have been more specific and explicit in his findings, he did consider all of the evidence and found that it did not support the level of disability [the claimant] claimed." Id. at 960. The Court found that the ALJ did comply with 96-8p because the ALJ "consider[ed] all of the evidence and found that it did not support the level of disability [the claimant] claimed. Only after he determined she failed to carry her burden of showing that she had become disabled from performing any of her work-related activities did he state that she could perform light exertional activity." Id. Additionally, the Court found that the ALJ complied with 96-8p because his hypothetical to the VE

limiting the claimant to light exertional work necessarily addressed her functional limitations.  Id.

Here, the ALJ complied with SSR 96-8p in a similar manner as did the ALJ in Freeman.  The ALJ stated that "[a]fter careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform the full range of sedentary work." (T. 26).  Included in the medical record were function-by-function assessments from two consulting physicians which address Appellant's functional limitations. (T. 572-89).  The ALJ further stated that she "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence . . . [and] also considered opinion evidence. . . ."  (T. 26).  Furthermore, like the ALJ in Freeman, in one of her hypotheticals to the VE, the ALJ here limited a hypothetical claimant to lifting a maximum of ten pounds, standing and walking a total of two hours in an eight-hour day, and sitting for a total of six hours in an eight-hour day while avoiding repetitive crouching, crawling, stooping and squatting.[6] (T. 650-

---

[6] "The ability to perform the full range of sedentary work requires the ability to lift no more than 10 pounds at a time and occasionally to lift or carry articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one that involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.  'Occasionally' means occurring from very little up to one-

51).  These actions by the ALJ suggest that she complied with the requirements in SSR 96-8p, although, as in Freeman, she might have been "more specific and explicit in [her] findings" relating to her function-by-function assessment.  Freeman, 220 Fed.Appx. at 960.

Accordingly, the undersigned concludes that the ALJ did not err by failing to properly perform a function-by-function assessment. See Allen v. Astrue, 2010 WL 1658811, at *6-7 (S.D.Ala. Apr. 21, 2010)("The fact that the ALJ did not expressly address each functional ability . . . is of no moment where the record clearly demonstrates that the ALJ considered all of the evidence."); see also Engebretson v. Astrue, 2008 WL 4845298, at *5 (S.D.Ga. Nov. 6, 2008)(holding that the ALJ did not err by failing to perform a function-by-function analysis where the ALJ considered all of the medical evidence including consultants' opinions on the claimant's functional limitations).

**C.  Did the ALJ err by failing to find that Appellant's obesity was a severe impairment?**

Appellant argues that the ALJ failed to consider her obesity when making her disability determination in accordance with SSR 02-01p.  (App. Br. at 12).  In response, the government argues that the ALJ properly disregarded Appellant's obesity because Appellant

---

third of the time, and would generally total no more than about 2 hours of an 8-hour workday.  Sitting would generally total about 6 hours of an 8-hour workday."  SSR 96-9p.

"apparently never referenced her weight as a reason she could not work." (Comm. Br. at 8-9).

The second step of the sequential-disability determination requires that the ALJ "consider the medical severity of [the claimant's] impairments." Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004)(quoting 20 C.F.R. § 404.1520(a)(4)(ii)). In doing so, the ALJ must determine whether the impairments, alone or in combination, "significantly limit" the claimant's "physical or mental ability to do basic work skills." Phillips, 357 F.3d at 1237 (citing 20 C.F.R. § 404.1520(c)). If the ALJ concludes that the claimant has a severe impairment, she must determine the residual functional capacity of the claimant by considering all of the claimant's impairments, not only those which have been deemed severe. 20 CFR § 416.945; SSR 96-8P. While failure to consider all of a claimant's impairments will typically be grounds for reversal, Gibson v. Heckler, 779 F.2d 619, 622-623 (11th Cir. 1996), an ALJ need not consider impairments when the claimant fails to put the ALJ on notice of their existence. Street v. Barnhart, 133 Fed.Appx. 621, 627-28 (11th Cir. 2005).

In Street the record before the ALJ contained a psychological evaluation that indicated that the claimant was experiencing depression, and possessed "borderline intellectual functioning." Id. at 624-25. When his application was denied, the claimant

19

appealed, arguing that the ALJ erred by failing properly to consider his borderline intellectual functioning.  <u>Id.</u> at 627.  In denying the appeal, the Eleventh Circuit noted that:

> [The claimant] did not list any mental impairment or intellectual functioning issues in his application for SSI benefits, nor did he testify at his hearing that he suffered from any intellectual or mental impairments that would prevent him from working.  This failure alone could dispose of his claim, as it has been persuasively held that an administrative law judge is under no obligation to investigate a claim not presented at the time of the application for benefits and not offered at the hearing as a basis for disability.

<u>Id.</u> (citing to <u>Pena v. Chater</u>, 76 F.3d 906, 909 (8th Cir. 1996).

Similarly, in <u>Davis v. Commissioner of Social Security</u>, 2004 WL 3723521, at *2 (11th Cir. Nov. 15, 2004), the Eleventh Circuit held that, where "the claimant did not allege that her anemia was disabling in her applications or at the administrative hearing, and there is no evidence in the record that her anemia caused symptoms that would affect ability to work . . . the ALJ did not err by failing to mention [the] anemia before making a disability determination." <u>Id.</u>, at *2.

Though the cases cited above are unpublished and thus not binding on this Court, the undersigned finds their reasoning persuasive and finds that an ALJ need not consider an impairment when a claimant "did not list [the impairment] in his application for SSI benefits, nor did he testify at his hearing that he suffered

AO 72A
(Rev.8/82)

from [those impairments or] present any evidence to the ALJ that would have put him on notice of [a] limitation on [the claimant's] ability to function." Street, 133 Fed.Appx. at 627-28; Davis, 2004 WL 3723521, at *2; East v. Barnhart, 197 Fed.Appx. 899, 903 (11th Cir. 2006)("the ALJ need not scour the medical record searching for other impairments that might be disabling, either individually or in combination, that have not been identified by the claimant.").[7]

Here, Appellant did not identify obesity as a grounds for disability, either on her SSI form or at the hearing. (T. 634-653). Furthermore, Appellant did not allege or testify that her obesity was disabling or caused her any limitations, and nothing in the record suggests such a conclusion. Accordingly, upon consideration of the record in this case in light of the above authority, the undersigned concludes that the ALJ did not err in failing to

---

[7]   With regard to obesity, courts have seized on the notice requirement of Street, holding that a failure to discuss obesity will only be reversible if the record reflected evidence that the claimant's obesity *actually* affected her ability to function. Forte v. Barnhart, 377 F.3d 892, 896 (8th Cir. 2004)("Although [the claimant's treating doctors noted that [the claimant] was obese and should lose weight, none of them suggested his obesity imposed any additional work-related limitations, and he did not testify that his obesity imposed additional restrictions."); Burch v. Barnhart, 400 F.3d 676, 683 (9th Cir. 2005)(affirming the ALJ's opinion where "[e]ven on appeal [the claimant] has not pointed to any evidence of functional limitations due to obesity which would have impacted the ALJ's analysis."); Fincher v. Astrue, 2010 WL 739513, at *4 (S.D.Ga. Mar. 1, 2010)(requiring evidence of obesity's effect on claimant's ability to work in order to support reversal).

21

consider the effect of Appellant's obesity on the severity of her impairments, or on her residual functional capacity.

**D.  Did the ALJ err by finding that Appellant could return to her light past relevant work even though the ALJ's own RFC limited Appellant to sedentary work?**

Appellant contends that the ALJ committed reversible error when she "decided that [Appellant] could return to her past relevant work as a fast food worker or cashier even though those jobs are precluded by the ALJ's own residual functional capacity finding [which was sedentary]." (App. Br. at 13-14). The Commissioner responds that any error with regard to this statement by the ALJ was harmless because Appellant's other past relevant work as an assistant registrar and as a telemarketer are both performed at the sedentary level of exertion. (Comm. Br. at 10-11).

When an ALJ makes a mistake that is irrelevant to the outcome of a case, such an error is harmless and need not necessitate reversal of the Commissioner's decision. Diorio v. Heckler, 721 F.2d 726, 728 (11th Cir. 1983). In Ayers v. Barnhart, the ALJ concluded that the claimant could return to her past relevant work as a convenience store clerk even though the VE testified that the claimant could not return to that job because she suffered from a certain disease. 2007 WL 295518, at *8 (M.D.Fla. Jan. 30, 2007). Although the District Court found that the ALJ had erred, the Court determined that this error was "simply harmless in light of the VE's

22

additional testimony identifying other job (sic) available to the Plaintiff . . . ." Id.

The undersigned finds that, like the ALJ in Ayers, any errors in identifying the specific past relevant work Appellant could do was a harmless error. The ALJ found that Appellant was limited to sedentary work, yet found that she could return to two of her previous jobs, a cashier and a fast food worker, both of which are performed at the light exertional level. In so finding, however, the ALJ also noted that Appellant's prior work included assistant registrar and telemarketer, both sedentary jobs which Appellant could perform. The ALJ also noted that while Appellant's past relevant work as a cashier and a fast food worker were light work, in those jobs the "claimant was not required to perform work activities precluded by her medically determinable impairments." (T. 28). In short, the ALJ's findings were sufficient with regard to Appellant's ability to do her past relevant work, and, even if there was any error with regard to the cashier and fast food jobs, it was harmless.

Accordingly, the undersigned finds that the Commissioner's decision should be **AFFIRMED** as to this issue as well.

23

### VIII.
### <u>Conclusion</u>

Upon review, the undersigned **RECOMMENDS** that the Commissioner's decision be **AFFIRMED.**

**SO REPORTED AND RECOMMENDED**, this 14th day of July, 2010.


<u>s/ *E. Clayton Scofield III*</u>
E. Clayton Scofield III
UNITED STATES MAGISTRATE JUDGE

24